UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KURT SIUZDAK,
    Plaintiff,

v.

HONORABLE LORETTA E. LYNCH, in her official capacity as the Attorney General of the United States,[1]
    Defendant.

No. 14-cv-001543 (VAB)

## RULING ON MOTION TO DISMISS

Plaintiff, Kurt Siuzdak, brings a complaint (the "Complaint") [Doc. No. 1] alleging unlawful retaliation by his employer, the Federal Bureau of Investigation ("FBI"). Defendant, then the Honorable Eric H. Holder, Jr., in his official capacity as the Attorney General of the United States, moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 19. For the reasons that follow, the motion is DENIED.

## I.    BACKGROUND[2]

Kurt Siuzdak is a male special agent with the Federal Bureau of Investigation ("FBI"). Prior to joining the FBI in 1997, Mr. Siuzdak allegedly suffered a knee injury while serving in the United States military, which resulted in his walking with a perceptible limp. The "Veterans Administration" allegedly certified him as having a 30% disability rating. In addition, Mr. Siuzdak allegedly suffered a lung injury as a result of his presence at the World Trade Center during the September 11, 2001 terrorist attack.

---

[1] Plaintiff's action was brought against Eric H. Holder, Jr., in his official capacity as Attorney General of the United States. Because Loretta E. Lynch succeeded Eric H. Holder, Jr., as the Attorney General of the United States, and because Plaintiff brings no individual capacity claims against Eric H. Holder, Jr., Loretta E. Lynch is substituted for Eric H. Holder, Jr., pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to revise the case caption accordingly.
[2] All background information is taken from the Complaint, unless otherwise noted. All allegations in the Complaint are accepted as true for purposes of the motion to dismiss. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("it is well established that, in passing on a motion to dismiss, . . . the allegations of the complaint should be construed favorably to the pleader").

1

In June 2009, Mr. Siuzdak allegedly was assigned to the New London Resident Agency Office of the New Haven Field Office as a special agent.  He was assigned to Squad 4, which investigated criminal and violent crime matters.  At the time, Kimberly Mertz allegedly was the special agent in charge, which is the highest ranking special agent in an FBI field office.  Thereafter, David Gelios and Rhonda Glover were assigned to the New Haven Field Office as assistant special agents in charge, which is the position directly under special agent in charge.

In or around February 2012, Mr. Siuzdak applied for the position of chief division counsel in the New Haven Field Office.  Ms. Mertz allegedly eliminated the job posting before it could be filled.  In May 2012, Mr. Siuzdak allegedly was asked to serve as acting supervisor of Squad 4 for two days, but Ms. Mertz allegedly removed him from the position within two hours of his assuming the position.  In October 2012, Mr. Siuzdak allegedly was again asked to work as acting supervisor of Squad 4.  During his time as acting supervisor, a special agent under his charge submitted an operations plan to arrest a low level drug dealer.  Ex. A to Mot. to Dismiss, EEO Compl. dated Dec. 11, 2012 [Doc. No. 19-3], at 2.[3]  Ms. Mertz allegedly questioned Mr. Siuzdak on several aspects of the proposed operations plan, requested multiple revisions of the plan, and ultimately changed the plan and placed another agent in charge of the arrest.  *Id.* at 2-4.  Mr. Siuzdak alleges that Ms. Mertz was disrespectful and undermined his supervisory authority.  *Id.*

Mr. Siuzdak allegedly notified Supervisory Special Agent Todd Kalish on November 4, 2012, that he would be filing an Equal Employment Opportunity ("EEO") complaint against Ms. Mertz.  On that same day, he received a notification of an eighteen-month promotion from GS-

---

[3] On a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" or any document "where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  The exhibits attached to Defendant's motion to dismiss are part of the administrative record in Plaintiff's EEO cases, and are either referenced in or integral to the Complaint in this action.

13 special agent to GS-14 supervisory special agent in the Inspection Division, Internal Investigation Section at FBI Headquarters.  Mr. Siuzdak initiated contact with the EEO Office on November 15, 2012, alleging that he had been the subject of discrimination based on sex, age, and physical disability, both when he was not selected for the chief division counsel position and when he was removed from being in charge of the October arrest, and he filed a formal EEO complaint on December 11, 2012.  Doc. No. 19-3.

Mr. Siuzdak assumed his new, temporary position in Washington, D.C., on or about December 17, 2012.  However, he allegedly had agreed to continue working on three ongoing investigations in Connecticut that were scheduled for trial in mid-2013.  During the period of his promotion, he allegedly was entitled to monthly weekend return trips to Connecticut, which were paid for by FBI Headquarters.  He allegedly arranged to assist with the three Connecticut cases on these weekend trips and on weeknights, so as not to disrupt his work at the Inspection Division.

In or around April 2013, Ms. Mertz allegedly initiated an investigation into fuel expenses being charged to Mr. Siuzdak's government credit card and his use of government vehicles.  She also allegedly removed him as the official case agent from the three Connecticut cases on or about May 4, 2013.  Mr. Siuzdak sent an e-mail to Ms. Mertz on May 9, 2013, informing her that he had reported her investigation to the Inspection Division and would be filing a complaint with the Office of Professional Responsibility ("OPR").  On May 10, 2013, Ms. Mertz replied that she was required to file an OPR complaint against Mr. Siuzdak with the Inspection Division.  On May 15, 2013, Mr. Siuzdak filed an OPR complaint against Ms. Mertz and initiated contact with an EEO counselor, alleging that the investigation was undertaken in retaliation for his December 2012 EEO complaint.

Mr. Siuzdak alleges that, as a result of Ms. Mertz's actions, the FBI removed him from his position within the Inspection Division and locked him out of his office. He was moved to an open bullpen area in FBI Headquarters, where he remained for several weeks while assigned no work, which allegedly made it apparent to his colleagues that he was suspected of serious wrongdoing.

In June and July 2013, the New Haven Field Office and the United States Attorney's Office allegedly requested that Mr. Siuzdak travel to Connecticut to assist with preparation for one trial and to testify at another trial. Allegedly because of his concern about retaliation from Ms. Mertz, Mr. Siuzdak would not travel without approval from both the Inspection Division and the New Haven Field Office, which he received. He also requested that the New Haven Field Office provide him with a government vehicle to travel to court. Acting Assistant Special Agent in Charge Dan Lyons allegedly authorized the use of a government vehicle, but Ms. Mertz countermanded the approval and required that Mr. Siuzdak provide his own transportation.

In July 2013, the assistant director of the Inspection Division allegedly informed Mr. Siuzdak that Ms. Mertz's complaint was determined to be "unsubstantiated" by the OPR. On July 25, 2013, the FBI Office of EEO Affairs wrote Mr. Siuzdak a letter informing him that it was accepting his formal complaint, filed on June 13, 2013, for investigation. *See* Exs. F, H, I to Mot. to Dismiss [Doc. Nos. 19-8, 19-10, 19-11]. After completion of the investigation in early 2014, Mr. Siuzdak elected to have a hearing before an administrative judge of the Equal Employment Opportunity Commission. Ex. J to Mot. to Dismiss [Doc. No. 19-12]. An administrative judge had not yet been assigned when Mr. Siuzdak initiated this litigation.

On or about September 7, 2013, Ms. Mertz allegedly was promoted to deputy assistant director and transferred to FBI Headquarters, while Patricia Ferrick replaced her as special agent in charge of the New Haven Field Office. Beginning in or around November 2013, Mr. Siuzdak

4

allegedly applied for several supervisory positions, but was not selected for any of them. On July 11, 2014, he thus allegedly reverted from GS-14 to GS-13 and returned to the New Haven Field Office in a non-supervisory status.

Ms. Ferrick allegedly then removed him from the New London Resident Agency and transferred him to the main New Haven Field Office headquarters. She allegedly also removed him from the Criminal Division and assigned him to the Counterterrorism Division. Ms. Ferrick allegedly gave all special agents who had been in supervisory positions their choice of assignments, except Mr. Siuzdak. Ms. Ferrick allegedly gave Mr. Siuzdak an assignment that is generally meant as and understood to be a punishment.

Mr. Siuzdak initiated contact with an EEO counselor on August 12, 2014, alleging further retaliation, received a notice of right to file a discrimination complaint on September 17, 2015, and filed a formal EEO complaint on September 25, 2014. Ex. L to Mot. to Dismiss [Doc. No. 19-14]. On September 19, 2014, Mr. Siuzdak allegedly met with Ms. Ferrick to discuss his EEO complaint. During the meeting, she allegedly advised him that she would support him for a supervisory position in another field office but not in the New Haven Field Office.

Mr. Siuzdak initiated the instant litigation by filing the Complaint with this Court on October 20, 2014. He alleges unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), unlawful retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and unlawful retaliation in violation of the Rehabilitation Act, 29 U.S.C. §794.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v.*

*Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citations omitted).  When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557 (2007).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely."  *Id.* at 556 (internal quotation marks omitted).

## III.   DISCUSSION

The Complaint asserts three causes of action arising from the alleged retaliation Plaintiff suffered in response to his filing of an EEO complaint: under Title VII, under the ADEA, and under the Rehabilitation Act.  Defendant has moved to dismiss for failure to exhaust administrative remedies and failure to state a claim.

### A.      Failure to Exhaust Administrative Remedies

"Prior to bringing suit under either Title VII or the ADEA, a federal government employee must timely exhaust the administrative remedies at his disposal." *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001).  Likewise, "[a]n employee suing the federal government under the Rehabilitation Act must exhaust certain administrative remedies before initiating a lawsuit in federal court." *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002).

The administrative procedures that an aggrieved federal employee must exhaust prior to filing suit are,

> *inter alia*, (1) [to] consult with a counselor at the relevant agency's Equal Employment Office ('EEO') within 45 days of the alleged discriminatory act, *see* 29 C.F.R. § 1614.105(a)(1), and, if the matter is not resolved after a mandatory counseling period, (2) [to] file a formal written administrative complaint ('EEO complaint') within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ('EEO notice'), *see id.* § 1614.106(a), (b).  The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision.  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.408(a), (b).

*Belgrave*, 254 F.3d at 386 (Title VII and ADEA claims); *see also Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000) (same procedure for Rehabilitation Act cases).

Defendant first argues that the Complaint should be dismissed because Plaintiff did not timely exhaust his administrative remedies with respect to the alleged discrimination complained of in his initial EEO complaint of December 2012.  However, Plaintiff does not bring any discrimination claims in this litigation; all three causes of action assert retaliation claims.  Defendant concedes that Plaintiff has exhausted his administrative remedies with respect to the allegedly retaliatory investigation into Plaintiff's use of his government vehicle and credit card.  *See* Doc. No. 19-1, at 9-10.

Defendant nevertheless implies that any factual allegations in the Complaint that do not directly reference the retaliatory investigation must be removed from the Complaint. The Court finds that there is no cause to do so.[4] Discriminatory acts that are not actionable due to a failure to timely exhaust administrative remedies "may constitute relevant background evidence" in support of a timely claim.[5] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002) (internal quotation marks omitted).

Defendant also argues that administrative remedies for any further retaliation that occurred subsequent to the filing of the second EEO complaint have not yet been exhausted. The Court disagrees. Exhaustion is not required where a claim is "reasonably related" to the claim filed with the agency. *See Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006). "This rule avoids unnecessary repeat filings of [administrative] complaints when the subsequent claims are sufficiently similar to those set forth in the original complaint." *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208 (2d Cir. 1993). The Second Circuit has "held repeatedly that a complaint alleging employer retaliation against an employee who has opposed discrimination may be considered 'reasonably related' to allegations already raised" administratively.[6] *Id.*

---

[4] Moreover, the relief requested here would be improper to grant in response to a Rule 12(b)(6) motion to dismiss, as Defendant appears to be requesting that factual allegations be removed from the Complaint rather than seeking the dismissal of particular claims; such relief would be properly sought under a Rule 12(f) motion to strike. *See* Fed. R. Civ. P. 12(f)(2) ("The court may strike from a pleading . . . any . . . immaterial . . . matter . . . on motion made by a party . . . before responding to the pleading[.]").

[5] Defendant argues that allowing the challenged factual allegations to remain in the Complaint would impose overly burdensome discovery obligations and confuse the jury at trial, but has presented no basis for this position. The limitations imposed by the Federal Rules of Civil Procedure and Federal Rules of Evidence on the discoverability and admissibility of evidence will continue to apply in this case, based on the relevance of information to the actual causes of action that have been asserted, regardless of the quantity of background and contextual factual allegations contained in the Complaint. *Cf., e.g., Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000) (holding that district court has discretion to limit discovery arguably relevant to allegations contained in complaint when "the burden and expense of these discovery requests far outweighed their likely benefit").

[6] The Second Circuit has recognized three kinds of "reasonably related" claims: (1) as described *supra*, retaliation by an employer against an employee for filing an administrative charge; (2) conduct that "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"; and (3) "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."

The subsequent adverse actions alleged in the complaint are claimed to have been taken in retaliation for Plaintiff's second EEO complaint. Claims related to such alleged conduct fall squarely within the "reasonably related" exception described *supra*.

> This exception applies in situations where an employer retaliates against an employee because the employee filed an administrative charge. Thus, courts . . . have allowed retaliation claims not alleged in the administrative charge to proceed in situations where the retaliation occurred after the filing of the administrative charge or lawsuit. In essence, it would be inequitable in those situations to require a plaintiff to file new administrative charges for retaliation claims when they arose out of, and are part and parcel of, the other claims contained in the administrative charges or lawsuit.

*Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 284 (D. Conn. 2009) (citation omitted). The fact that Plaintiff filed a third EEO complaint alleging retaliatory conduct in response to the filing of the second EEO complaint does nothing to change the fact that those claims are reasonably related to the earlier ones.[7]

All claims against Defendant for retaliation against Plaintiff for filing his first and second EEO complaints either have been administratively exhausted by Plaintiff's second EEO complaint or are reasonably related to that complaint. Any factual allegations not directly referencing those retaliation claims may provide relevant background information. Accordingly, Defendant's motion to dismiss for failure to exhaust administrative remedies is **DENIED**.

### B.     Failure to State a Claim

While "an employment discrimination plaintiff need not plead a *prima facie* case of

---

*Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993) (internal quotation marks omitted). "While the three are each animated by the common notion of fairness to civil rights litigants, their 'reasonableness' derives from separate rationales." *Id.* at 1402. Defendant argues that the further acts of retaliation alleged by Plaintiff to have occurred after the filing of his second EEO complaint were not carried on in "precisely the same manner" as the acts alleged in his second EEO complaint, but Defendant fails to address whether the alleged later acts could fall under either of the other two categories of reasonably related claims.

[7] Defendant, citing *Morgan*, also argues that the alleged later retaliatory acts are "examples of discrete acts, not continuing courses of discriminatory conduct." Def. Reply Br. [Doc. No. 27], at 5. However, the continuing course of conduct doctrine is not at issue here. Specifically, *Morgan* stands for the proposition that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period," 536 U.S. at 112, a holding distinct from the "reasonably related" exceptions to the administrative exhaustion requirement.

9

discrimination . . . to survive [a] motion to dismiss," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002), "a complaint must allege the essential elements of an employment discrimination claim—that [the] plaintiff suffered discrimination on the basis of protected status," *Gonzales v. Eagle Leasing Co.*, No. 3:13-CV-1565, 2014 WL 4794536, at *3, 2014 U.S. Dist. LEXIS 134913, at *8 (D. Conn. Sept. 25, 2014) (internal quotation marks and citations omitted). In short, "to survive a motion to dismiss, a Title VII plaintiff's complaint must be facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228-29 & n.10 (2d Cir. 2014). In addition, "for a [Title VII] retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

Defendant argues that Plaintiff has failed to plead any facts that would establish a causal connection between the Plaintiff's first EEO complaint and the alleged retaliation. The Court disagrees.

> A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action. Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action. It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision. 'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive. Further, the but-for causation standard does not alter the plaintiff's ability to demonstrate causation through temporal proximity.

*Id.* at 90-91 (internal quotation marks and citations omitted). "'As other courts within the Second Circuit have held, temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination.'" *Vale v. Great Neck Water Pollution*

*Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) (quoting *Shlafer v. Wackenhut Corp.*, 837 F.Supp.2d 20, 27 (D. Conn. 2011)).

Though the Second Circuit "has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it] ha[s] previously held that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). Plaintiff filed his first EEO complaint on December 11, 2012. Ms. Mertz allegedly initiated the retaliatory investigation against Mr. Siuzdak in or around April 2013. Accordingly, Plaintiff has sufficiently alleged facts that could establish the essential element of causation and thereby has stated a plausible claim for retaliation under Title VII.

Therefore, Defendant's motion to dismiss for failure to state a claim is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. No. 19] is **DENIED**.

SO ORDERED at Bridgeport, Connecticut, this 7th day of March, 2016.

        /s/ Victor A. Bolden
        Victor A. Bolden
        United States District Judge