**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KURT SIUZDAK, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:14cv1543 (VAB) |
| | : | |
| VS. | : | |
| | : | |
| HONORABLE LORETTA E. LYNCH | : | |
| In Her Official Capacity as the Attorney | : | |
| General of the United States, | : | |
| Defendant. | : | OCTOBER 3, 2016 |

**SECOND SUBSTITUTED COMPLAINT**

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the plaintiff, with the consent

of the defendant, amends the complaint, originally filed in the consolidated case of Siuzdak v.

Lynch, Civil Case No. 15-CV-1712 (VAB), and substitutes this Second Substituted Complaint

for the First Substituted Complaint.

I.      **PRELIMINARY STATEMENT**

1.      This action seeks declaratory, injunctive, and equitable relief, monetary and

liquidated damages, and costs and attorney fees to remedy the unlawful

discrimination suffered by the plaintiff when the Federal Bureau of Investigation

("FBI") retaliated against him on account of his filing EEO complaints in June 2013,

against his supervisors in which he claimed that he was the victim of age, disability,

gender discrimination, and retaliation, against his supervisors.

2.      Additionally, this action seeks declaratory, injunctive, and equitable relief, monetary

and liquidated damages, and costs and attorney fees to remedy the unlawful

discrimination suffered by the plaintiff when the Federal Bureau of Investigation ("FBI") retaliated against him on account of his filing lawsuits, Case #: 3:14-cv-01543-VAB, and Case #: 3:15-cv-01712-VAB against the Honorable Loretta E. Lynch, in the United States District Court for the District of Connecticut on October 20, 2014, and November 20, 2015, respectively, in which he claimed that he had been the subject of unlawful retaliation on account of his filing prior complaints of age, disability, and gender discrimination against his supervisors

## II.    <u>**JURISDICTION**</u>

3.      This action likewise arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

4.      This action arises under The Age Discrimination In Employment Act, Title 29 U.S.C. §621 et seq.

5.      Additionally, this action arises under the provisions of the Rehabilitation Act, Title 29 U.S.C. §§ 791 and 794.

6.      Jurisdiction is invoked pursuant to Title 28 U.S.C. §1343(a)(3), Title 28 U.S.C. §1343(a)(4), Title 29 U.S.C. §626(b) and Title 42 U.S.C. §2000e-5(f).

7.      All conditions precedent to jurisdiction under Section 706 of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e-5(f)(3), and the ADEA have occurred or have been complied with in the following manner:

   a.   On September 25, 2014, the plaintiff, a Special Agent (SA), New Haven Division, of the Federal Bureau of Investigation (FBI), filed an employment

discrimination complaint with the Office of Equal Employment Opportunity Affairs alleging that he was subjected to unlawful retaliation for having filed previous complaints of discrimination and retaliation against the FBI.

b.  On December 23, 2014, the plaintiff amended his complaint to include additional acts of retaliation involving his supervisor's refusal to recommend him for two supervisory positions, which occurred shortly after he filed lawsuit, Case #: 3:14-cv-01543-VAB, against the Honorable Eric H. Holder, Jr. in the United States District Court for the District of Connecticut on October 20, 2014, in which he claimed that he had been the subject of unlawful retaliation on account of his filing complaints of age, disability, and gender discrimination against his supervisors.

c.  After the FBI's Office of Equal Employment Opportunity Affairs (OEEOA), conducted an EEO investigation of the plaintiff's complaint, it informed the plaintiff of his right to either a hearing before an EEOC Administrative Judge or a final written decision from the Department of Justice.

d.  The plaintiff elected to have the Department of Justice issue a final decision.

e.  On August 24, 2015, the Department of Justice issued a final decision.

f.  On February 11, 2015, the plaintiff again filed an employment discrimination complaint with the Office of Equal Employment Opportunity Affairs, which he amended on April 9, 2015, alleging that he was subjected to unlawful

retaliation for having filed previous complaints of discrimination and retaliation against the FBI.

g.   After the FBI's Office of Equal Employment Opportunity Affairs (OEEOA), conducted an EEO investigation of the plaintiff's complaint, it informed the plaintiff of his right to either a hearing before an EEOC Administrative Judge or a final written decision from the Department of Justice.

h.   The plaintiff elected to have the Department of Justice issue a final decision.

i.   On February 4, 2016, the Department of Justice issued a final decision.

j.   The plaintiff is authorized to file a civil action against Loretta E. Lynch, pursuant to 29 C.F.R. §1614.408 (b) and (c).

8.   Declaratory, injunctive, monetary damages, compensatory damages, liquidated damages and equitable relief is sought pursuant to Title 28 U.S.C. §2201, §2202, Title 29 U.S.C. §626 and Title 42 U.S.C. §2000e-5(g).

9.   Compensatory damages are sought pursuant to Title 42 U.S.C. §1981a.

10.   Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §2000e-5(k), Title 29 U.S.C. §626 and Title 42 U.S.C. §1988.

## III.   <u>VENUE</u>

11.   This action properly lies in the United States District Court for the District of Connecticut pursuant to Title 28 U.S.C. §1391(b), because the claims of the plaintiff arose in within the District of Connecticut.

12.     This action also properly lies in the United States District Court for the District of Connecticut pursuant to Title 29 U.S.C. §626, because the unlawful employment practices were committed in this judicial district.

**IV.**   **PARTIES**

13.     The plaintiff, Kurt Siuzdak, is a citizen of the United States residing in the State of Connecticut.

14.     The defendant, Loretta E. Lynch ("Lynch"), is the Attorney General of the United States of America, and is considered the head of the agency, the Federal Bureau of Investigation, which has discriminated against the plaintiff on the basis of the plaintiff's opposition to age, gender, disability, and reprisal discrimination to which the plaintiff was subjected by the FBI.

15.     The defendant, Lynch, is being sued in her official capacity pursuant to Title 42 U.S.C. § 2000e-16(c).

16.     The United States Department of Justice, and the Federal Bureau of Investigation, of which the defendant, Lynch, is the head, are executive agencies within the meaning of 42 U.S.C. § 2000e-16(a).

**V.**   **FACTS**

17.     In 1996, the plaintiff applied and was accepted for employment with the FBI.

18.     On or about March 2, 1997, the plaintiff entered on duty (EOD) as a Special Agent (SA) with the FBI.

19.   Upon completion of new agent's training at the FBI Academy, the plaintiff was assigned to the New York Division.

20.   Between 1997 and 2007, the plaintiff worked numerous sophisticated and high profile cases, including organized crime, white collar crime, and counter-terrorism investigations.   In addition he was part of the New York Field Office's Rapid Deployment Team.

21.   The plaintiff was present as a first responder during the attack on the World Trade Center ("WTC"), who arrived at the WTC minutes after the first airplane crashed into the towers.  He remained at the site and was involved in the subsequent investigation.

22.   The plaintiff suffered a lung injury as a result of his presence at the World Trade Center.

23.   In 2003-2004, the plaintiff served in Iraq as part of the New York Field Office Rapid Deployment Team.

24.   In 2005, the plaintiff served in New Orleans in the aftermath of Hurricane Katrina.

25.   During the summer of 2006 and 2007, the FBI paid for the plaintiff to attend an intensive language program at Middlebury College to become proficient in studying the Arabic language and culture.

26.   In January 2008, the plaintiff was promoted to a GS-14 Assistant Legal Attaché in Baghdad Iraq.

27.   The plaintiff worked in Iraqi theater of war from January 2008 until January 2009, thereafter the plaintiff voluntarily extended his tour twice until finally leaving Iraq in June 2009.

28.     In June 2009, the plaintiff returned to the United States and was assigned to the New London Resident Agency Office of the New Haven Field Office (NHO) as a Special Agent (SA).

29.     At all times relevant to this complaint, the plaintiff was a Special Agent ("SA") assigned to the FBI's New Haven Division.

30.     From November 2012, to June 2014, the plaintiff served a temporary duty assignment as a GS-14 SSA in the Inspection Division at FBI Headquarters.

31.     At the conclusion of his temporary duty assignment as a GS-14 SSA in the Inspection Division at FBI Headquarters, the plaintiff returned to the New Haven Division and was assigned to Squad 3, the Joint Terrorism Task Force.

32.     In June of 2013, the plaintiff filed an EEO complaint based on age, disability, gender discrimination, and retaliation.

33.     Although the plaintiff had requested a hearing before an EEOC Administrative Law Judge to hear his complaint, the complaint was never scheduled for a hearing.

34.     As a result, the plaintiff filed a lawsuit on October 20, 2014, in the United States District Court for the District of Connecticut in which he alleged that the defendant had subjected him to unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, and the Rehabilitation Act.

35.     Because the acts of retaliation against the plaintiff continued after he had filed his EEO complaint in June of 2013, the plaintiff filed, on September 25, 2014, another

employment discrimination complaint against the FBI with the Office of Equal Employment Opportunity Affairs alleging that he was subjected by his supervisors to further acts of unlawful retaliation for having filed previous complaints of discrimination and retaliation.

36.    The plaintiff asserted in the complaint which he filed on September 25, 2014, that in retaliation to the EEO complaints which he had previously filed,

    a.    On July 11, 2014, he was demoted to a GS-13 position;

    b.    On August 1, 2014, he was punitively reassigned to another squad; and

    c.    The SAC of the New Haven Division, Patricia Ferrick, on September 17, 2014, wrongfully counseled the plaintiff based on the false accusations that the plaintiff had not checked his voicemail regularly, and was working well with various law enforcement partners, and inquired about his retirement plans.

37.    After the plaintiff filed his lawsuit on October 20, 2014, the retaliation to which the plaintiff was subjected by SAC Ferrick, and her subordinates, for opposing the unlawful discriminatory conduct to which he had been subjected, and for exercising his lawful right to oppose unlawful discrimination and retaliation by filing administrative and court complaints, increased in magnitude.

38.    SAC Ferrick, without legitimate reasons, blocked the plaintiff's efforts for promotion, declaring in written reports that the plaintiff was not qualified for promotion to an SSA position.

39. When a vacancy opened for an SSA position in Meriden, Connecticut, SAC Ferrick submitted a FD-955 Division Head Recommendation Form, in which she stated that she could not recommend the plaintiff for promotion to fill the vacancy.

40. The plaintiff was fully qualified to work as the SAA in Meriden, Connecticut.

41. The plaintiff requested promotion to the SSA position in Meriden, Connecticut.

42. Despite the plaintiff's qualifications, SAC Ferrick, on or about December 11, 2014, refused to recommend the plaintiff for promotion to the position of SAC in Meriden.

43. In the FBI, division head recommendations are automatic, unless the division head, in this case SAC Ferrick, provides a reason for a non-recommendation.

44. SAC Ferrick's non-recommendation occurred only one month after the plaintiff received a successful performance evaluation and several months after the plaintiff received two awards in the summer of 2014.

45. Between the date of the successful performance appraisal and the non-recommendation, SAC Ferrick, and ASAC Kevin Kline were to maintain records related to the plaintiff's work performance.

46. During the entire performance year of 2015 (Oct 2014-September 2015), neither SAC Ferrick, nor ASAC Kline, had prepared a single record documenting the plaintiff's job performance despite submitting a non-recommendation for the SSA position in Meriden, Connecticut.

47.  In the same manner, SAC Ferrick, continued to retaliate against the plaintiff for opposing the discriminatory, and retaliatory conduct to which SAC Ferrick had

9

subjected him, when she refused, on or about December 19, 2014, to recommend the plaintiff for promotion to the vacant SSA position in Houston. Texas.

48.    Once again, during the entire performance year of 2015 (Oct 2014-September 2015), neither SAC Ferrick, nor ASAC Kline, had prepared a single record documenting the plaintiff's job performance despite submitting a non-recommendation for the SSA position in Houston, Texas.

49.    The plaintiff was fully qualified to work as the SAA in Houston, Texas.

50.    The plaintiff requested promotion to the SSA position in Houston, Texas.

51.    Despite the plaintiff's qualifications, SAC Ferrick, on or about December 19, 2014, refused to recommend the plaintiff for promotion to the position of SAC in Houston, Texas.

52.    When the retaliation by the plaintiff's supervisors continued unabated, he exercised his legal rights and filed an additional employment discrimination complaint on February 11, 2015, which he amended on April 9, 2015, against the FBI with the Office of Equal Employment Opportunity Affairs alleging that he was still being subjected to unlawful retaliation by his supervisors for having filed previous complaints of discrimination and retaliation.

53.    ASAC Kevin Kline ("Kline") retaliated against the plaintiff on January 30, 2015, when the removed from the plaintiff his job responsibilities, including his investigatory duties, as a special agent, and assigned him to work only Guardian leads, and placing the plaintiff on daily supervision.

54.    For an experienced special agent such as the plaintiff, the actions of Kline were demeaning, and career damaging.

55.    The defendant was fully aware that removing the plaintiff's job responsibilities and assigning him to work only Guardian leads was career damaging.

56.    Between June 2014, and the present date, Kline never issued the plaintiff any written counseling concerning the performance of the plaintiff's investigatory duties.

57.    Between June 2014, and the present date, Kline never verbally counseled the plaintiff regarding the performance of the plaintiff's investigatory duties.

58.    Between September 2014, and the present date, Kline did not hold a single conversation with the plaintiff.

59.    Despite having no communication with the plaintiff regarding the plaintiff's job performance, Kline maintained the plaintiff on remedial duties for approximately ten months.

60.    In June 2015, the plaintiff underwent a joint replacement surgery by the Department of Veteran Affairs to help correct his service connected disability.

61.    Because of the surgery, between June 2015 and June 2016, the plaintiff was rated by the Department of Veterans Affairs as 100% disabled with a U.S. military service connected disability.

62.    Between June 2015 and October 29, 2015, the Plaintiff was on post-operative sick leave or limited duty with the FBI.

63.     Between June 2014 and December 2015, Kline was a supervising official for the plaintiff and Kline never had a single meeting or discussion with the plaintiff regarding any work performance issue.

64.     On October 26, 2015, the Department of Justice established jurisdiction over a retaliation complaint filed with the Department of Justice Office of Attorney Recruitment and Management (OARM).

65.     OARM adjudicates 28 CFR Part 27 whistleblower complaints from the FBI.

66.     The complaint related to reprisal by Ferrick in job postings 20150151 (Meriden Resident Agency) and 20150241 (Houston) that was caused by the September 19, 2014, meeting between Ferrick and the plaintiff in which they discussed the EEO matter.

67.     In or around the same date, October 26, 2015, Kline retaliated against plaintiff by ordering the plaintiff's supervisor, Andrew Klopfer, to rate Siuzdak as minimally successful for the 2015 performance year.

68.     Klopfer disobeyed Kline's order and created a performance appraisal that rated Siuzdak as successful.

69.     Klopfer met with Ferrick to discuss Kline's order, and Ferrick directed Klopfer to follow Kline's order.

70.     Following Ferrick's directive, Klopfer redrafted the performance appraisal to rate the plaintiff minimally successful.

71.     Thereafter, Kline further diminished the performance review to include additional pejorative statements against the plaintiff.

72.     On or about October 29, 2015, the plaintiff was provided with the performance review which stated his work was less than fully successful.

73.     The rated period included the time that the plaintiff was recovering from his U.S. military service connected disability.

74.     In or around November 7, 2015, Kline again retaliated against the plaintiff by ordering that all of the plaintiff's national security submissions be rejected.

75.     On November 10, 2015, the plaintiff filed a request with the Department of Justice to institute an injunction against Ferrick's and Kline appraisal of the plaintiff on the basis that the 2015 performance appraisal was retaliatory.

76.     On or About November 20, 2015, Ferrick raised the plaintiff's performance review to successful.

77.     On December 2, 2015, the FBI thereafter filed an objection with the Department of Justice which attempted to argue the plaintiff injunction request was moot because Ferrick raised the plaintiff's performance rating to successful.

78.     On December 10, 2015, the Department of Justice rejected the FBI's arguments and issued injunctive relief in the form of an order to stay the successful performance review provided by Ferrick to the plaintiff.

79.     On or about December 13, 2015, the plaintiff was transferred from Kline's unit.

80.  In or around April 2016, the Department of Justice Office of Inspector General (DOJ OIG) initiated an investigation related to Kline's and Ferrick's 2015 performance appraisal for the plaintiff that was issued on October 29, 2015.

81.  On August 18, 2016, DOJ OIG issued a report that determined there were "reasonable grounds to believe there has been a reprisal" against the plaintiff for making a protected disclosure to the Attorney General of the United States in form of the service of the writ, summons and complaint in the instant civil action.

82.  The DOJ OIG report noted Klopfer stated among other things the plaintiff "did a significant amount of work and did it well."

83.  The DOJ OIG report noted Kline's statement contradicted Klopfer by stating the plaintiff was documenting numerous activities but not doing in-depth investigations.  Kline "expressed frustration with the [significant] number of notes in the [plaintiff's] files.  Klopfer contradicted Kline by stating he "believed more documentation was better."

84.  According to DOJ OIG, Kline "could not recall any substantive issues that were left open or not addressed" in any of the plaintiff's investigations.

85.  During the Department of Justice investigation, Kline admitted he never met with the plaintiff to discuss any performance issues.

86.  DOJ OIG determined Klopfer's favorable description of the plaintiff was credible.

87.  On September 06, 2016, DOJ OARM issued a separate ruling which determined that there was sufficient evidence to indicate the plaintiff had been retaliated against by

the FBI as it related to Ferrick's non-recommendations for job postings 20150151 and 20150241.

88.     On or about April 2, 2015, Ferrick again retaliated against Siuzdak by filing a non-recommendation against Siuzdak for job #20150355, Bridgeport Resident Agency Supervisor.

89.     On or about April 2, 2015, the plaintiff was notified by FBI Headquarters that an investigator from the FBI Office of Equal Employment Opportunity Affairs (OEEOA) would be travelling to New Haven to conduct interviews related to Kline's January 30, 2015 retaliation.

90.     On or about the same time, Ferrick personally conducted a search of plaintiff's desk and workspace.

91.     On or about April 7, 2015, Ferrick initiated another retaliatory investigation against the plaintiff by ordering the FBI New Haven Administration Section to provide Ferrick with the plaintiff's administrative and/or financial records for the preceding twelve months.

92.     On information and belief, Ferrick's retaliatory investigation of the plaintiff was initiated, and conducted without opening an internal investigation inquiry or contemporaneously documenting any of her investigatory activities against the plaintiff.

93.     On or about April 20, 2015, an investigator from OEEOA arrived in New Haven to conduct interviews related to Kline's January 30, 2015 retaliation and Ferrick's April 7, 2015 retaliation.

94.     On the arrival of the investigator, Ferrick ordered one or more members of her staff to conduct another investigation to determine which FBI employee(s) disclosed Ferrick's investigation of the plaintiff's administrative and/or financial records to the plaintiff.

95.     Between the filing the initial EEO complaint in 2012, and the present date, the plaintiff has been investigated three times by the SACs in New Haven.

96.     In or around June 2015, Ferrick further retaliated against the plaintiff by filing another FD-955 against him for job # 20150772.

97.     In the FD-955, Ferrick falsely stated that the plaintiff routinely took ninety days to complete Guardian leads, which is the maximum time a lead is allowed to be opened, when, in fact, the plantiff completed each lead in approximately fifty days.

98.     The actions taken against the plaintiff by SAC Ferrick, and ASAC Kline to which the plaintiff was subjected after filing his court and EEO complaints against the defendant, would certainly deter a reasonable employee from making a discrimination complaint or otherwise engaging in protected activity under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, and the Rehabilitation Act.

## VI.   FIRST CAUSE OF ACTION (UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED)

99-196.  The plaintiff incorporates as if re-alleged paragraphs 1 through 98.

197.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful gender discrimination, and unlawful acts of retaliation when SAC Ferrick refused to recommend the plaintiff for promotion to the SSA positions in Meriden, Connecticut, and Houston, Texas, and refused to recommend the plaintiff for job # 20150772.

198.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful gender discrimination, and unlawful acts of retaliation when SAC Ferrick, without legitimate reason, initiated an investigation of the plaintiff's administrative and financial records, and personally searched the plaintiff's desk and workspace.

199.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful gender discrimination, and unlawful acts of retaliation when ASAC Kline removed from the plaintiff his job responsibilities as a special agent, including his investigatory duties, and assigned him to work only Guardian leads, as well as placing the plaintiff on daily supervision.

200.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful gender discrimination, and unlawful acts of retaliation when

ASAC Kline, without legitimate justification, took steps that resulted in the plaintiff's 2015 performance evaluation being downgraded.

201.   Because the plaintiff's opposition to the defendant's gender discrimination, and retaliation was the determinative factor in the retaliatory actions to which the plaintiff was subjected by SAC Ferrick, and ASAC Kline, the defendant violated Title VII of the Civil Rights Act of 1964, as amended.

202.   Because the plaintiff's participation in EEO proceedings, which he filed against SAC Ferrick, and ASAC Kline, and court litigation, which he filed against the defendant, were determinative factors in the retaliatory actions to which the plaintiff was subjected by SAC Ferrick, and ASAC Kline, the defendant violated Title VII of the Civil Rights Act of 1964, as amended.

203.   The defendant engaged in retaliation against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

204.   As a result of the unlawful retaliation, the plaintiff has suffered emotional distress.

205.   As a result of the unlawful retaliation, the plaintiff has suffered financial losses.

**VII.   <u>SECOND CAUSE OF ACTION (UNLAWFUL RETALIATION IN VIOLATION OF THE ADEA)</u>**

206-303. The plaintiff incorporates as if re-alleged paragraphs 1 through98.

304.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful age discrimination, and unlawful acts of retaliation when SAC

Ferrick refused to recommend the plaintiff for promotion to the SSA positions in Meriden, Connecticut, and Houston, Texas, and refused to recommend the plaintiff for job # 20150772.

305.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful age discrimination, and unlawful acts of retaliation when SAC Ferrick, without legitimate reason, initiated an investigation of the plaintiff's administrative and financial records, and personally searched the plaintiff's desk and workspace.

306.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful age discrimination, and unlawful acts of retaliation when ASAC Kline removed from the plaintiff his job responsibilities as a special agent, including his investigatory duties, and assigned him to work only Guardian leads, as well as placing the plaintiff on daily supervision.

307.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful gender discrimination, and unlawful acts of retaliation when ASAC Kline, without legitimate justification, took steps that resulted in the plaintiff's 2015 performance evaluation being downgraded.

308.   Because the plaintiff's participation in EEO proceedings, which he filed against SAC Ferrick, and ASAC Kline, and court litigation, which he filed against the defendant, were determinative factors in the retaliatory actions to which the plaintiff was subjected

by SAC Ferrick, and ASAC Kline, the defendant violated Age Discrimination in Employment Act.

309. The defendant engaged in retaliation against the plaintiff with malice or reckless indifference to the plaintiff's rights under Age Discrimination in Employment Act.

310. As a result of the unlawful retaliation, the plaintiff has suffered emotional distress.

311. As a result of the unlawful retaliation, the plaintiff has suffered financial losses.

## VIII.   THIRD CAUSE OF ACTION (UNLAWFUL RETALIATION IN VIOLATION OF THE REHABILITATION ACT)

312-409. The plaintiff incorporates as if re-alleged paragraphs 1 through 98.

410. The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful disability discrimination, and unlawful acts of retaliation when SAC Ferrick refused to recommend the plaintiff for promotion to the SSA positions in Meriden, Connecticut, and Houston, Texas, and refused to recommend the plaintiff for job # 20150772.

411. The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful disability discrimination, and unlawful acts of retaliation when SAC Ferrick, without legitimate reason, initiated an investigation of the plaintiff's administrative and financial records, and personally searched the plaintiff's desk and workspace.

412. The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful disability discrimination, and unlawful acts of retaliation

when ASAC Kline removed from the plaintiff his job responsibilities as a special agent, including his investigatory duties, and assigned him to work only Guardian leads, as well as placing the plaintiff on daily supervision.

413.   The FBI discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful gender discrimination, and unlawful acts of retaliation when ASAC Kline, without legitimate justification, took steps that resulted in the plaintiff's 2015 performance evaluation being downgraded

414.   Because the plaintiff's participation in EEO proceedings, which he filed against SAC Ferrick, and ASAC Kline, and court litigation, which he filed against the defendant, were determinative factors in the retaliatory actions to which the plaintiff was subjected by SAC Ferrick, and ASAC Kline, the defendant violated the provisions of the Rehabilitation Act.

415.   The defendant engaged in retaliation against the plaintiff with malice or reckless indifference to the plaintiff's rights under Rehabilitation Act.

416.   As a result of the unlawful retaliation, the plaintiff has suffered emotional distress.

417.   As a result of the unlawful retaliation, the plaintiff has suffered financial losses.

## IX.    PRAYER FOR RELIEF

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

(As to the First, and Third Causes of Action)

    a.  Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights;

    b.  Enjoin the defendant from engaging in such conduct;

    c.  Award plaintiff the equitable relief of back pay and benefits, together with prejudgment interest for the entire period as well as front salary and benefits accrual;

    d.  Award plaintiff compensatory damages;

    e.  Award plaintiff costs and attorney fees; and

    f.  Grant such other and further relief as the Court may deem just and proper.

(As to the Second Cause of Action)

    a.  Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights;

    b.  Enjoin the defendant from engaging in such conduct;

    c.  Award plaintiff the equitable relief of back pay and benefits, together with prejudgment interest for the entire period as well as front salary and benefits accrual;

    d.  Award plaintiff liquidated damages;

e.  Award plaintiff costs and attorney fees; and

f.  Grant such other and further relief as the Court may deem just and proper.

**X.**       **JURY DEMAND**

**THE PLAINTIFF REQUESTS A TRIAL BY JURY**.

THE PLAINTIFF – KURT SIUZDAK

By: /s/ Thomas W. Bucci
        Thomas W. Bucci
        Fed. Bar #ct07805
        WILLINGER, WILLINGER & BUCCI, P.C
        855 Main Street
        Bridgeport, CT   06604
        Tel: (203) 366-3939
        Fax: (203) 337-4588
        Email: thomasbucci@earthlink.net

## Certificate of Service

I hereby certify that on October 3, 2016, a copy of foregoing *Second Substituted Complaint* was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

THE PLAINTIFF – KURT SIUZDAK


By /s/Thomas W. Bucci
Thomas W. Bucci
Fed Bar # ct07805
Attorney for Plaintiff
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: 203-366-3939 Fax: 203-337-4588
Email: thomasbucci@earthlink.net