# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

_____

KURT SIUZDAK                                                    )
                                                               )
                                                               )
                                        Plaintiff,             )
                        v.                                     )
                                                               )
JEFFERSON B. SESSIONS, III, In His Official Capacity as        )   Civil Action No.
the Attorney General of the United States,                     )   14-CV-1543 (VAB)
                                                               )
                                                               )
                                        Defendant.             )   MARCH 9, 2018
                                                               )
_____                     )

## MOTION IN LIMINE

The defendant, Jefferson B. Sessions, III, by his counsel, Grant C. Jaquith, United States

Attorney for the Northern District of New York, Karen Folster Lesperance, Assistant United States

Attorney, of counsel, submits the following motion *in limine*.

The sole question to be determined by this trial is whether Special Agent in Charge

"(SAC") Patricia Ferrick retaliated against Plaintiff for having previously complained of

employment discrimination when she issued non-recommendations for three supervisory positions

in December 2014 and May 2015.[1]   SAC Ferrick contends that she had legitimate non-retaliatory

reasons for her actions – i.e., that she did not recommend Siuzdak for promotion because she had

concerns about his abilities to lead and manage a squad.   The plaintiff must prove at trial that

these reasons were a pretext for retaliation, that the real reason Ferrick issued non-

---

[1]   In its February 21, 2018, summary judgment decision, the Court dismissed the balance of Plaintiff's retaliation claims.

recommendations was to retaliate against Plaintiff for prior EEO complaints and/or his federal lawsuit, and that, in the absence of the EEO complaints and/or lawsuit, she would have recommended him for the promotions.  Any evidence that does not relate to SAC Ferrick's reasons and motives for not recommending Siuzdak should be excluded.

## ARGUMENT

**I.   PLAINTIFF SHOULD NOT BE PERMITTED TO INTRODUCE THE OARM'S "FINAL DETERMINATION" OR "CORRECTIVE ACTION ORDER" ISSUED IN HIS WHISTLEBLOWER CASE, OR TO TESTIFY REGARDING THAT PROCEEDING OR ITS FINDINGS**

Defendant seeks to preclude the introduction into evidence of the Final Determination of the Department of Justice's Office of Attorney Recruitment and Management ("OARM"), the Corrective Action Order issued by OARM, or any trial testimony concerning the contents of either (collectively, the "OARM Determination"), pursuant to Federal Rules of Evidence 403 and 803. Exhibits 1 and 2 on Plaintiff's proposed exhibit list are the OARM's "final determination" in that matter, and a "corrective action order" issued after following that determination.

The OARM Determination does not satisfy the hearsay exception in FRE 803(8) because Defendant has appealed it administratively; therefore, it is a nonfinal agency determination subject to *de novo* review.   The OARM Determination contains findings regarding the ultimate issues to be decided by the jury in this case, as well as the credibility of witnesses who will testify at trial. Its introduction at trial will invade the fact-finding authority of the jury by essentially "vouching" for the credibility of Plaintiff's testimony.  As such, any potential relevance of the OARM Determination will be substantially outweighed by the unfair prejudice to the Defendant. Moreover, as the Plaintiff acknowledged in his opposition to Defendant's motion for summary judgment, the OARM Determination involves different legal and factual issues, and applies a

2

different standard of proof, than those involved in the instant case. (Dkt. #67 at 1-2).   Accordingly, consideration of the OARM Determination is likely to confuse the jury.

### A.      Relevant Facts

Separate and apart from this action or any of his prior EEO complaints, Plaintiff brought a whistleblower action based upon his allegation that "the FBI, through SAC Ferrick and ASAC Kline, took a number of personnel actions against him in reprisal for" Plaintiff's protected whistleblower disclosure on September 19, 2014, that his former supervisor was allegedly committing time and attendance fraud.

By way of background, Congress has enacted whistleblower protections specifically for FBI employees who act as whistleblowers. *See* 5 U.S.C. § 2303; Declaration of Kathleen O'Neill, Esq. at ¶ 3.   Congress provided the Attorney General with the authority to issue regulations ensuring that personnel actions are not taken against FBI employees in retaliation for making protected whistleblower disclosures.   *Id.*; O'Neill Decl. ¶ 4.   Under those regulations, FBI employees may bring claims of whistleblower reprisal to the Office of Professional Responsibility (OPR) or the Office of Inspector General (OIG).   *See* 28 C.F.R. § 27.3(a)(1); O'Neill Decl. ¶ 5.

If either the OPR or the OIG choose not to pursue an investigation or terminate an investigation, the complainant may present his claim of whistleblower retaliation directly to the Director of OARM.   *See* 28 C.F.R. 27.4(c)(1); O'Neill Decl. ¶ 6.   Under the regulations, the Director of OARM determines, based on the evidence, whether the complainant made a protected disclosure, and if such disclosure was a contributing factor in a personnel action.   *See* 28 C.F.R. 27.1(a), 27.2(b); O'Neill Decl. ¶ 7.

In or about May 2015, Plaintiff reported a claim of whistleblower retaliation to the OIG. The OIG declined to investigate the matter, and Plaintiff then presented the matter directly to OARM.   O'Neill Decl. ¶ 8.   Following a discovery period, Plaintiff and the FBI presented written arguments concerning the Plaintiff's claims of whistleblower retaliation. *Id.* ¶ 9. OARM did not conduct an investigation into Plaintiff's whistleblower allegations, and did not hold any type of hearing.   *Id.* ¶ 10.   OARM did not listen to live testimony in any manner. *Id.* ¶ 11.   OARM's Final Determination in Plaintiff's claim was based solely on the written materials presented by Plaintiff and the FBI.   *Id.* ¶ 12.   The Final Determination was not made by an administrative judge or administrate law judge; rather the determination was rendered by Jamilia Frone, the Director of OARM, an attorney who, prior to becoming the OARM Director in 2014, has served in various legal positions within the DOJ.   *Id.* ¶¶ 13-14.

On May 9, 2017, following the issuance of OARM's Final Determination, the FBI exercised its right pursuant to federal regulations to appeal the Final Determination to the Deputy Attorney General (DAG).   *Id.* ¶ 15; 28 C.F.R. § 27.5.   The FBI's appeal of the matter is still pending before the DAG.   *Id.* ¶ 16.

At its core, the resolution of Plaintiff's OARM complaint turned on the question of whether the FBI demonstrated by clear and convincing evidence that SAC Ferrick would have non-recommended Plaintiff for promotion in the absence of his whistleblowing activities.   Although the alleged motivation was different, the allegedly retaliatory employment actions alleged in the RCA include the same "non-recommendations" that are at issue in this trial.

Despite the absence of an evidentiary hearing or the receipt of any live testimony by OARM, the OARM Determination purports to resolve conflicts between the parties' factual

assertions and to make credibility determinations regarding those assertions based solely upon the written record.  Among other things, with regard to the September 19, 2014, meeting at which Plaintiff allegedly made his whistleblower disclosure to SAC Ferrick, the OARM Determination found Plaintiff's "version of events to be slightly more credible."   OARM Determination at 15.[2] As a result of its resolution of the parties' factual disputes and assessment of the credibility of each party's witnesses, the OARM Determination found that "SAC Ferrick may have had some motivation to retaliate" against Plaintiff for his whistleblower disclosures and ordered the parties to submit proposals for appropriate corrective action.  *Id.* at 35.

As a result of this Court's February 21, 2018 Ruling and Order on Motion for Summary Judgment, the only alleged acts of retaliation remaining for trial are SAC Ferrick's non-recommendation of Plaintiff for three promotions.   Decision at 28.   The questions for the jury to determine include the question of whether SAC Ferrick's stated reasons for the three non-recommendations were pretextual.   Given the OARM Determination's witness credibility findings (based solely upon a review of the written record), it would be patently and unfairly prejudicial for the OARM Determination to be received into evidence and considered by the jury. This is particularly true in light of the risk of issue confusion, as the OARM Determination does not involve the same legal standard or issues as those applicable here.   As such, Defendant submits that the Court should preclude Plaintiff from offering the OARM Determination at trial.

---

2   In part, the OARM Determination reached this conclusion due to the burden-shifting analysis peculiar to such proceedings, under which the FBI must show "by clear and convincing evidence" that it would have taken the same action in the absence of any whistleblowing activities by the employee.  *See* OARM Determination at 7 (Dkt. #68-1).

**B.      The OARM Determination Is Not Admissible Under FRE 803(8).**

As an initial matter, Defendant submits that the OARM Determination must be precluded because it does not meet the public records and reports hearsay exception found in Federal Rule of Evidence 803(8).   In pertinent part, the public records and reports exception deems admissible:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed.R.Evid. 803(8)(C); *see generally Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169–70 (1988).

As an initial matter, there was no "investigation made pursuant to authority granted by law" here.   OIG specifically declined to investigate, so Plaintiff submitted his RCA to OARM. OARM itself is not an investigative agency, and does not itself conduct any type of investigation. The parties engaged in some discovery on their own, and then made written submissions to OARM that consisted of legal arguments and relied on affidavits, documents, and depositions testimony, much the same as a summary judgment motion in civil litigation.   Unlike motion practice in civil litigation, however, the written submissions were considered by an OARM attorney rather than a judge, and that attorney made factual findings, credibility determinations, and legal conclusions based on the written submissions alone, and not based on any investigation conducted on their own authority.

Moreover, while there is no question that a final administrative determination regarding employment discrimination can satisfy the FRE 803(8)(C) standard, courts are less inclined to admit the "nonfinal" determinations of interim decisionmakers, particularly when such determinations are subject to further administrative review.   *See, e.g., United Air Lines, Inc. v.*

6

*Austin Travel Corp.,* 867 F.2d 737, 743 (2nd Cir. 1989) ("Considering as well the interim or inconclusive nature of the reports . . . the court was entirely within its discretion when it refused to consider them"); *Gentile v. County of Suffolk,* 129 F.R.D. 435, 458 (E.D.N.Y. 1990) (stating that "finality is a consideration favoring admission" under Fed.R.Evid. 803(8)(C) and admitting report because it was final); *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1140 (5th Cir. 1983) ("If the document is not sufficiently final, it may not constitute a 'factual finding' ... under the exception to the hearsay rule in Fed.R.Evid. 803(8)(C)"); *Rambus, Inc. v. Infineon Tech. AG*, 222 F.R.D. 101, 108 (E.D.Va. 2004) ("the presence of an ongoing appeal foreclose a determination that the Initial Decision constitutes an agency's 'factual finding'").

The non-final nature of OARM Determination also renders it untrustworthy under FRE 803(8)(C).   *See Rambus*, 222 F.R.D. at 108 ("the fact that the Initial Report is subject to *de novo* review and thus is preliminary in nature also casts doubt upon its "trustworthiness" under Fed.R.Evid. 803(8)(C).") (citing, e.g., *Plemer*, 713 F.2d at 1140 (noting that if administrative report is not final, it "*may be considered untrustworthy*" under 803(8)(C)(emphasis added); *Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1342 n. 4 (3rd Cir. 2002) (stating that, in determining trustworthiness under Fed.R.Evid. 803(8)(C), courts may consider, *inter alia,* " '[t]he finality of the agency findings, *i.e.,* the state of the proceedings at which the findings were made (whether they are subject to subsequent proceedings or *de novo* review), and the likelihood of modification or reversal'") (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1125, 1147 (E.D. Pa. 1980)); *Barlow v. Conn.,* 319 F.Supp.2d 250, 258 (D. Conn. 2004) (excluding report because of its preliminary nature).   As such, Defendant submits that the OARM Determination should be excluded under FRE 803(8)(C).

**C.      The OARM Determination Should Be Excluded Under FRE 403.**

Even if the Court determines that OARM Determination constitutes "factual findings from

a legally authorized investigation" by a public agency subject to the hearsay exception in Federal

Rule of Evidence 803(8)(A)(iii), that is not the end of the analysis.   It is well settled that the "fact

that evidence is within an exception to the hearsay rule does not by itself make it admissible *per

se*."   *See Doe v. Univ. of Connecticut*, No. 3:09 CV 1071 JGM, 2013 WL 4504299, at *16–17 (D.

Conn. Aug. 22, 2013) (citing *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir. 1999)).

This Court retains discretion to exclude such hearsay on other grounds, such as where (as here)

"the evidence's probative value is substantially outweighed by the danger of unfair prejudice

[under Rule 403]."   *Id.*

In fact, courts commonly preclude the introduction of agency determinations that, like the

OARM Determination, "pose a significant risk of unfair prejudice to the defendants […] [b]ecause

its findings on [defendant's motive for an adverse employment action] will determine the jury's

ultimate finding on liability [as] … the Decisions would function, in effect, as a kind of vouching

for plaintiff's evidence on pretextuality."   *See Abramowitz v. Intra-Boro Acres Inc.*, 98-CV-4139

(ILG), 1999 WL 1288942, at *8 (E.D.N.Y. Nov. 16, 1999) (citing *Hall v. Western Production Co.*,

988 F.2d 1050, 1058 (10th Cir.1993)) *Kyle v. City of New York*, No. 03 CV 3540 SLTKAM, 2006

WL 2375462, at *1 (E.D.N.Y. Aug. 15, 2006) ("Evidence of administrative decisions containing

"factual conclusions, that, if taken at face value, might reasonably be construed as foreclosing

deliberation" on an element of Plaintiff's case pose a significant risk of unfair prejudice to the party

against whom it is offered.") (quoting *Abramowitz*).   The OARM Determination carries exactly

that risk.

As noted above, the OARM Determination contains numerous findings based upon an assessment of witness credibility – an assessment which was made without the benefit of live testimony.  Those findings include OARM's conclusion that "we find [Plaintiff's] version of events to be slightly more credible[;]" "we tend to give slightly more weight to [Plaintiff's] version of events[;]" OARM's conclusion that SAC Ferrick's reliance upon Plaintiff's neglect of his voicemail as a basis for non-recommendation was "unpersuasive"; and "the strength of FBI's evidence in support of the FD-955s at the time SAC Ferrick completed them in December 2014 is insufficient to convince us that the actions were non-retaliatory[.]"   OARM Determination at 15, 17, 27, 35.   These findings clearly carry the risk that the jury will be misled into believing that the questions of motive and credibility at issue in this case have already been resolved in Plaintiff's favor.[3]  *See McNair v. Gov't of D.C.*, 124 F. Supp. 3d 13, 17–18 (D.D.C. 2015) ("Admitting the Recommendation would have 'confused the jury into thinking that the issue was already decided.'") (quoting *Lewis v. City of Chicago Police Dep't,* 590 F.3d 427, 442 (7th Cir. 2009)). As the parties will have a "full opportunity to present to the jury all the evidence" relevant to Plaintiff's claims, any probative value from the OARM Determination is substantially outweighed by its prejudicial effect.   *See Doe v. Univ. of Connecticut*, 2013 WL 4504299 at *17.[4]

As the *Abramowitz* court observed, "a case in which it is appropriate to admit prior determinations by . . . administrative agencies that go directly to the merits of a pending ADEA

---

3    In addition, the OARM Determination contains improper vouching for Plaintiff's "character" insofar as it concludes that the altercation between Plaintiff and SSA Klopfer "was out of character for [Plaintiff] or likely inconsistent with the 'tremendous level of interpersonal ability' displayed by [Plaintiff] during the 2014 rating period."   P. 30

4    As noted above, the risk of unfair prejudice is particularly significant here because the OARM Determination also contains findings regarding the credibility of witnesses who will testify before the jury – despite the fact that the witnesses at issue never testified before OARM.

claim, will be the rare exception."   1999 WL 1288942 at *9.   This observation is particularly apt where the administrative determination will likely confuse and mislead the jury, as it may not be clear to the jury that OARM was not applying the same standard legal standards as those applicable to the jury's determination.   *See Collins v. Omega Flex, Inc.*, No. CV 08-1422, 2009 WL 10681438, at *1 (E.D. Pa. July 30, 2009) (any probative value from consideration of administrative decision "is substantially outweighed by the danger of unfair prejudice and confusion of the issues") (citing *Abramowitz*, 1999 WL 1288942, at *8).   Where, as here, "[b]oth the inquiry and the standard of proof are different" that those applied in the administrative proceeding, the risk for unfair prejudice and confusion of the issues is clear.   *Id.*

### D.   The Corrective Action Order Should Be Excluded on the Separate Grounds that it is Not Relevant to any Issue to be Determined By the Jury

The Corrective Action Order that was issued based on the OARM Final Determination should be excluded for all the reasons set forth above, but also for the separate reason that it is simply not relevant to any of the issues before the jury in this case.   The Corrective Action Order focused on the appropriate calculation of back pay and attorneys' fees.   These are equitable remedies, to be determined by the Court not the jury if there is a verdict that defendant retaliated against Plaintiff.   *See, e.g., Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005) ("this Court agrees with the defendant that case law is clear that the issue of back and front pay damages in a Title VII retaliation case is to be resolved by this Court rather than a jury"); *Hamza v. Saks Fifth Ave., Inc., 2011 U.S. Dist. LEXIS 139132, 10-11 (S.D.N.Y. Dec. 5, 2011)*.   *See also* Plaintiff's Proposed Jury Instructions, Ex. C to Joint Trial Memorandum, at p. 7.

Accordingly, the OARM Determinations and any testimony relating to the contents thereof should not be admissible at trial.

II.   **PLAINTIFF SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE OR TESTIMONY RELATING TO CLAIMS THAT WERE ABANDONED OR DISMISSED.**

As this Court is well aware, Plaintiff filed numerous EEO complaints and three different federal court lawsuits between 2012 and 2015.   Two of the federal court actions were consolidated and the third was withdrawn, and a Second Substituted Complaint was ultimately filed in the consolidated action, which is the operative pleading in this action.   Certain allegations were made in EEO complaints that were never alleged in any of the federal court actions.   Other alleged acts of retaliation were pled in one of the original federal court complaints, but then omitted from the Second Substituted Complaint, presumably abandoned.   This Court's decision on summary judgment dismissed the remainder of Plaintiff's claims except for his claim that non-recommendations for promotion were retaliatory.

As such, Plaintiff should be precluded from introducing any and all evidence relating to, or testifying about, any other alleged acts of retaliation unless those acts reasonably relate to SAC Ferrick's state of mind when she issued the non-recommendations for promotion.

A.   **The OIG Report of Investigation**

Exhibit 3 on Plaintiff's Exhibit List is a Report of Investigation from the Department of Justice's Office of the Inspector General (the "OIG Report").   As an initial matter, the OIG Report should be excluded under FRE 403 for all the reasons set forth above in Point I, *supra,* with respect to the OARM Determination.

Moreover, the OIG Report focuses exclusively on Plaintiff's second whistleblower complaint, in which he alleged that Assistant Special Agent in Charge ("ASAC") Kevin Kline retaliated against him for making a whistleblower disclosure by assigning him to only work

11

Guardian leads in January 2015 and by rating him "Minimally Successful" in his 2015 Performance Appraisal Rating ("PAR") in October 2015.   Each of these claims was asserted by Plaintiff in this lawsuit, and each was dismissed in this Court's decision on Defendant's Motion for Summary Judgment.

Because the claims that were investigated and discussed in the OIG Report are no longer viable claims in this lawsuit, and because the investigation and findings do not relate in any way to SAC Ferrick's non-recommendations in December 2014 and January 2015, the OIG Report can serve no purpose in this litigation other than to attempt to prejudice the jury against the Defendant. As such, the OIG Report should be excluded under FRE 402 and 403.

**B.     Other Evidence Relating to Plaintiff's 2015 PAR**

Exhibits 11 and 12 on Plaintiff's exhibit list are the 2015 PAR itself, as well as a November 20, 2015 letter from Ferrick informing Siuzdak that, after reviewing the 2015 PAR following his appeal from that PAR, she had determined to change his rating from "Minimally Successful" to "Successful."   These documents relate to claims that have been dismissed, and to events that took place between five and eleven six months after the last of the non-recommendations that are issue in this lawsuit.   They are not relevant to any of the issues to be determined by the jury, and should be excluded.

Additionally, Plaintiff's witness list indicates that he intends to have SSA Andrew Klopfer testify regarding a conversation he allegedly had with SAC Ferrick relating to Siuzdak's "Minimally Successful" 2015 PAR rating. [5]   Again, this conversation took place, if at all,

_____

[5] Notably, Plaintiff also indicates that he intends to call SSA Klopfer as an adverse witness.   It is clear from the sworn statements and the deposition testimony of Klopfer, upon which Siuzdak relied heavily in opposition to Defendant's motion for summary judgment, that SSA Klopfer is not adverse to Siuzdak.   Plaintiff's request to treat

sometime after September 30, 2015 (the end of the rating period) and therefore can have no relevance to the question of whether SAC Ferrick's decisions not to recommend Siuzdak for promotion in December 2014 and May 2015 were motivated by retaliatory animus.

### C.   Evidence Relating to Events that Occurred After May 2015

Again, the only question for the jury to determine at trial is whether SAC Ferrick retaliated against Siuzdak when she submitted non-recommendations for promotion in December 2014 and May 2015.   As such, and as is discussed above, anything that happened after May 2015, the date of the last non-recommendation, cannot be relevant to SAC Ferrick's state of mind when she issued the non-recommendations.   Evidence or testimony relating to events which took place after May 2015 are not relevant and should not be admitted.

Likewise, Plaintiff's exhibit list indicates that SSA Andrew Klopfer will testify regarding Plaintiff's work performance.   Any testimony in this regard should be limited to the time period between July 2014, when Siuzdak returned to New Haven after his TDY to FBI Headquarters, and May 2015, when the last non-recommendation was issued.

### D.   Plaintiff's PAR from Any Year Other Than 2014

Plaintiff's exhibit list also includes his PAR evaluations from 2012 and 2013.   Ferrick was not the SAC in New Haven in 2012, and indeed had not even met Siuzdak in 2012.   At the time she issued the non-recommendations, she had no access to the 2012 or 2013 PAR.   In 2013, Siuzdak was working in the Inspections Division in FBI Headquarters.   His work performance one to two years prior to SAC Ferrick being asked to submit a Division Head recommendation for promotion, when he worked in a different office than Ferrick and was not under her chain of

---

this witness as adverse, and therefore lead him through his direct testimony, should not be permitted.

command, bears no relevance to Ferrick's intent when she decided to not recommend him for promotion in December 2014 and May 2015.

## III. PLAINTIFF SHOULD NOT BE PERMITTED TO TESTIFY OR INTRODUCE OTHER EVIDENCE RELATING TO ALLEGATIONS OF TIME AND ATTENDANCE FRAUD BY MARK GENTIL

At the heart of Plaintiff's whistleblower allegations, and intertwined with his EEO complaints, are allegations he made in September 2014 that former SSA Mark Gentil regularly engaged in time and attendance fraud.   However, this allegation made by Plaintiff is not protected activity under Title VII, the ADEA, or the Rehabilitation Act.   Even if Plaintiff could prove that SAC Ferrick's non-recommendations were retaliatory for Plaintiff's allegations against Gentil, that would not be a violation of any of the statutes at issue, and would not be actionable in this litigation.   To allow Plaintiff to testify or introduce evidence of these disclosures runs the risk of misleading the jury to believe that defendant is liable in this action if Siuzdak was retaliated against for having complained of alleged time and attendance fraud.

As such, testimony or other evidence relating to allegations of time and attendance fraud by Mark Gentil should be precluded under FRE 402 and 403.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully submits that his motion *in limine* should be granted in its entirety, and that the Court should grant such other and further relief as it may find just and proper.

Dated: March 9, 2018

GRANT C. JAQUITH
United States Attorney
Northern District of New York


By:

KAREN FOLSTER LESPERANCE
Assistant United States Attorney
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY   12207
Telephone:   (518) 431-0247
Facsimile:   (518) 431-0249
Karen.Lesperance@usdoj.gov